THOMAS GARHAM & another *vs.* MUTUAL AID SOCIETY.

Suffolk.    December 14, 15, 1893. — May 18, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Beneficiary Association — Receiver — Distribution of Funds — Attachment.*

By a decree of the Superior Court a receiver was appointed for a society purporting to be organized under the provisions of chapter one hundred and fifty-two of the General Laws of the State of New Hampshire, having its location in the city of Manchester in that State, and its principal place of business in the city of Boston in this Commonwealth, the object of whose incorporation was to institute lodges throughout the State of New Hampshire and other States and Territories for friendly co-operation and moral and social improvement; to collect and accumulate a fund from which any person holding a certificate of the corporation might be entitled to receive a sum not exceeding $100, according to the terms and conditions of the certificate; to buy, sell, hold, improve, and lease real estate, personal property, and other property necessary or incident to the conduct of such business, and to carry on the business of general brokers in stocks, securities, shares, certificates, bonds, and choses in action, and in buying and selling the same. The receiver was authorized to take possession of the property and effects of the corporation, to collect all debts due to it, and to distribute the funds among its creditors under the direction of the court. The corporation was directed to deliver to the receiver all assets and property of any kind or nature belonging to the corporation within this Commonwealth, and to execute and deliver to him conveyances and assignments of all its assets and property not within this Commonwealth. Notice was ordered to be sent to

all claimants and certificate holders whose names appeared upon the books of the corporation and who were in good standing, and to be published in certain newspapers, to all claimants and certificate holders to appear and present their claims at a time and place named, before the receiver, who was authorized to hear and pass upon them. *Held,* that it was evident from the proceedings of the court, that it intended that the receiver should collect and receive property of the corporation found outside of the Commonwealth, as well as within it, and that holders of certificates resident in other States than this Commonwealth should present and prove their claims before the receiver.

A decree of the Superior Court entered upon the report of the receiver of a corporation purporting to be organized under chapter one hundred and fifty-two of the General Laws of the State of New Hampshire, the object of whose incorporation was the institution of lodges throughout the State of New Hampshire and elsewhere for friendly co-operation and moral support, for the collection and accumulation of a benefit fund payable to certificate holders according to the terms and conditions of the certificate, and, as incident to the management of such fund, for the purpose of dealing in real and personal estate and of carrying on the business of general stockbrokers, provided that under the constitution and by-laws of the society all certificate holders who, at the time of the filing of the bill asking for the appointment of a receiver had failed to pay any assessment, including the last one levied, for thirty days after the same was called, and had not been reinstated under the by-laws, must be deemed to have retired of their own motion before the court intervened, and be treated as no longer members in good standing, and held to have no interest in the fund to be distributed. *Held,* that though this was a different rule from that laid down in New Hampshire where the corporation was organized, it was substantially the same rule as that declared in this Commonwealth in *Fogg* v. *United Order of the Golden Lion,* 156 Mass. 431, and was correct.

It is doubtful whether an association purporting to be organized under chapter one hundred and fifty-two of the General Laws of the State of New Hampshire, and having its principal place of business in this Commonwealth, the object of whose incorporation is the institution of lodges throughout the State of New Hampshire and elsewhere for friendly co-operation and moral support, for the collection and accumulation of a benefit fund payable to certificate holders according to the terms and conditions of the certificate, and, as incident to the management of such fund, for the purpose of dealing in real and personal estate and of carrying on the business of general stockbrokers, can be called a fraternal benefit corporation within the meaning of St. 1888, c. 429, or whether it was legally established as a corporation under the laws of the State of New Hampshire. If it is not a corporation, it is a voluntary association of individuals doing business in this Commonwealth under a constitution and by-laws to which all the members have assented, and by which their membership is to be determined, and the members must be regarded either as partners or co-owners of the property, and if the association is not strictly a partnership the property on its dissolution must be distributed among the members in much the same manner as if it were a partnership.

The filing of a bill in this Commonwealth against a corporation, and the appointment of a receiver therefor, do not dissolve valid attachments of its property theretofore made, whether in this Commonwealth or elsewhere.

A corporation purporting to be organized under chapter one hundred and fifty-two of the General Laws of the State of New Hampshire, with its location in Manchester in that State and its principal place of business in this Commonwealth,

the object of whose incorporation is the institution of lodges throughout the State of New Hampshire and elsewhere for friendly co-operation and moral support, for the collection and accumulation of a benefit fund payable to certificate holders according to the terms and conditions of the certificate, and, as incident to the management of the fund, for the purpose of dealing in real and personal estate, and of carrying on the business of general stockbrokers, has, it seems, its actual home in this Commonwealth, and its funds held for the benefit of holders of certificates should be distributed here, so far as the court has power to do this ; and it is equitable and more nearly according to the analogy of the provisions of St. 1890, c. 321, relating to the insolvency of foreign corporations, that they should be proportionately distributed among the holders of certificates without regard to their place of residence, and that certificate holders and creditors who have valid attachments or have made proof of claims elsewhere should not be allowed to prove their claims unless the attachments are discharged, or the proofs cancelled, or the property attached or against which proofs have been made is delivered to the receiver here.

FIELD, C. J.    This case comes before us on the report of the Chief Justice of the Superior Court, and the questions reported relate to a decree entered in that court on the receiver's second report.    For the proper understanding of these questions it is necessary to refer to the receiver's second report, which refers to his first report and to the general nature of the suit.

The suit was brought in the Superior Court by two holders of benefit certificates of the Mutual Aid Society against that society, which is described as " a corporation organized under the laws of the State of New Hampshire, and having its usual place of business in Boston, in said county of Suffolk," and against all the officers of that society, who are described as inhabitants of this Commonwealth.    The certificates were issued in the name of the society, and in them the Supreme Lodge of the society promised to pay to the member named therein, being a member of a subordinate lodge, out of its benefit and reserve funds, a sum not exceeding $100, upon the condition that he shall comply with all the laws, rules, and regulations governing said subordinate lodge and its funds, and with all future laws that may be enacted by the Supreme Lodge governing said subordinate lodge and funds, and upon the surrender of his certificate at its legal termination ; provided that said member is in good standing, etc.    We understand that the Supreme Lodge is the corporation, so far as the Mutual Aid Society purports to be a corporation, although members of subordinate lodges are called members of the order.

The bill in effect alleges that the funds in the possession of the society are not sufficient to pay in full all certificates which have matured; that the society is paying a large number of them in full; that the funds in the hands of the society are likely to be in this manner wasted, and used for the payment of some certificate holders to the exclusion of others; that some of the funds of the society have been attached by certain certificate holders, and that the funds are being used illegally and improperly, and contrary to the trust upon which they are held, in paying certain preferred persons to the exclusion of others; and it prays that a receiver may be appointed to take charge of the funds of the society, in order that they may be distributed under the direction of the court, in accordance with law, to the various persons entitled to receive them; and it also prays that the officers may be enjoined from paying to any person any sum of money on account of benefit certificates, and for such other and further relief as the necessities of the case may require.

The society and the other defendants appeared and answered, and at the conclusion of the answer the society says, " that by reason of such attachments it believes the funds will not be equitably and properly distributed, and by reason thereof it says it is not opposed to the appointment of a receiver, and the winding up thereof according to law." A decree was entered appointing a receiver to take possession of the property and effects of the corporation; to take charge of and collect all debts due or which might become due to the corporation; and to distribute the funds among the creditors of the corporation under the direction of the court; and the receiver was empowered to prosecute and defend suits in his own name or in the name of the corporation, and to do all acts which might be necessary to convert the property of the corporation into money; and the corporation and its officers were directed to deliver to the receiver all assets, funds, securities, evidences of property, and all property of any kind or nature belonging to the corporation within this Commonwealth, and forthwith to execute and deliver to said receiver and his successor or successors in said office full and absolute conveyances and assignments of all assets, funds, securities, claims, and demands, and of all other

property and property rights, real or personal, of the corporation which are not within this Commonwealth. The court ordered notices to be sent to all claimants and certificate holders whose names appeared upon the books of the society and who were in good standing, and notices to be published in certain newspapers requiring all claimants and certificate holders to appear and present their claims, at a time and place named, before the receiver, who was authorized to hear and pass upon the claims; and it decreed that all claims not presented before a certain time named should be forever barred, unless further time was granted, for good cause, by the court.

It is evident, from the proceedings of the court, that it intended that the receiver should collect and receive property of the corporation found outside of the Commonwealth as well as within it, and that holders of certificates resident in other States than this Commonwealth should present and prove their claims before the receiver.

The receiver's reports show that six persons, described as of this Commonwealth, entered into articles of agreement for the purpose of becoming a corporation under the name of the Mutual Aid Society, according to the provisions of chapter 152 of the General Laws of New Hampshire of 1878. This agreement provided that the location of the corporation should be in the city of Manchester, in the State of New Hampshire, but that an office should be established in Boston, Massachusetts, where the principal business should be carried on; that the amount of capital stock should be $1,000, divided into twenty shares of $50 each; and that the object of the corporation should be in substance as follows: to institute lodges throughout the State of New Hampshire and other States and Territories for friendly co-operation and moral and social improvement; to collect and accumulate a fund from which any person holding a certificate of the corporation may be entitled to receive a sum not exceeding $100, according to the terms and conditions of said certificate; to buy, sell, hold, improve, and lease real estate, personal property, and other property necessary or incident to the conduct of such business, and to carry on the business of general brokers in stocks, securities, shares, certificates, bonds, and other choses in action, and in buying and selling the same.

The constitution and by-laws governing the supreme, grand, and subordinate lodges are annexed to the receiver's first report. The Mutual Aid Society is thereby empowered to grant charters for all subordinate lodges. One object of the society is declared to be " to establish a fund, from which members of this organization who have complied with all its laws, rules, and regulations may receive an amount not exceeding $100 on each certificate when they have held a continuous membership in the order for six months." All the certificates seem to have been issued under this constitution and these by-laws, and we understand that each certificate matures at the end of six months of continuous membership. The officers of the Supreme Lodge are authorized to issue calls for such assessments " as the Supreme Lodge treasury may from time to time require," and the secretary and treasurer of each subordinate lodge are required to collect these assessments from members of that lodge, and to forward the amount to the Supreme Treasurer, who is an officer of the Supreme Lodge. There appear to be a maturity fund and a reserve fund created out of these assessments, and these are, we infer, what are called the benefit and reserve funds. The maturity fund and the reserve fund are intended, as we understand, to be used exclusively for the payment of maturing certificates. There is also a general fund provided for, which we infer is to be used for paying the general expenses of the supreme, grand, and subordinate lodges. We infer that this general fund is in great part made up from the charter fees and quarterly dues paid by members of the subordinate lodges.

The receiver reports that, in examining the books of the corporation, no separation seems to have been made between the general fund and the benefit fund, and that the assets turned over to him by the Supreme Lodge, except those received from the Winthrop National Bank, were in the form of certificates of deposit, checks from subordinate lodges, and cash; and that no distinction has been made between creditors who are certificate holders and creditors for rent, salary, etc.; but the rights of creditors, as distinguished from those of certificate holders, are not before us. It appears that the receiver has in his possession some property from lodges organized in other States than this Commonwealth; that there are twenty-three subordinate lodges

of the society in several different States, but it does not appear that any have been organized in the State of New Hampshire; that the receiver appointed here has been appointed receiver of the corporation by the Supreme Court of the State of New Hampshire, but that no assets have come into his hands by virtue of his appointment as such receiver; and that he is informed and believes that there are no assets of the corporation in that State.

The report of the Chief Justice of the Superior Court to this court finds that it has been decided by a single justice of the Supreme Court of the State of New Hampshire, in a case pending before that court, to which, as we understand, the present defendant society was not a party, that corporations similar to the defendant society are fraudulent and illegal under the laws of that State, and that the rule there laid down is that the funds in the hands of the receiver should be distributed *pro rata* to the persons who have contributed to the funds, "without regard to the fact whether they have paid all the so called assessments levied upon them or not." This is a different rule from that laid down by the Superior Court * in this case, which gives effect to the constitution and by-laws of the society, under which the rights of many holders of certificates are held to have lapsed by reason of the nonpayment of assessments, or in some other manner. The Superior Court adopted substantially the same rule as that declared in *Fogg* v. *United Order of the Golden Lion*, 156 Mass. 431.

The receiver finds that this society has not complied with the provisions of St. 1888, c. 429, § 13. We doubt whether the organization under the statutes of New Hampshire which is shown by the agreement of the six persons hereinbefore referred

---

* By the third paragraph of the decree of the Superior Court it was provided that, under the constitution and by-laws of the Order, all certificate holders who, on November 16, 1891, the date of the filing of the bill asking for the appointment of a receiver, had failed to pay any assessment to and including assessment number 21, which was the last assessment levied by the corporation, for thirty days after the same was called, and had not been reinstated under the by-laws, must be deemed to have retired of their own motion before the court intervened, and be treated as no longer members in good standing, and held to have no interest in the fund to be distributed.

to can be called a fraternal beneficiary corporation, within the meaning of St. 1888, § 429. An examination of the General Laws of New Hampshire, c. 152, renders it very doubtful whether any corporation was legally established under the laws of that State. If it be a corporation at all, it purports by the agreement to be a corporation for doing, among other things, the business of a general broker in stocks, securities, etc., and this is not the business of a fraternal beneficiary corporation. If it be a foreign corporation, we do not see why it is not within the provisions of St. 1890, c. 321. If it be no corporation, then the members of the society must be regarded as a voluntary association of individuals, and all the members of the society and of the subordinate lodges seem to have assented to the constitution and by-laws adopted by the Supreme Lodge. The maturity and reserve funds, we think, are to be regarded as funds held by the Supreme Lodge on a sort of trust for the holders of certificates. *Coe* v. *Washington Mills*, 149 Mass. 543.

In the decree entered by the Superior Court the receiver was instructed in the second paragraph as follows : " That claims of certificate holders and creditors from other States must be postponed until the claims of citizens of this Commonwealth have been paid in full; and that the fact that certain foreign certificate holders have sued and obtained judgment in a court of this Commonwealth does not entitle them to the rights of citizens of this Commonwealth in a distribution of this fund." Certain holders of certificates resident in the State of Rhode Island have appealed from this decree, and especially from the second paragraph. Some of them have attached property in Rhode Island or in Massachusetts belonging to the society, and some of these have obtained judgments; others of the appellants are holders of certificates and members of Bristol Lodge No. 10, of Bristol, Rhode Island, who, as we understand, have not brought suits or attached the property of the society anywhere, and who have presented their claims for proof before the receiver appointed here. If the society is within the provisions of St. 1890, c. 321, § 2, it could have gone into insolvency under our laws, and by the terms of the second section of this statute the assignees would have had the rights, powers, duties, and privileges that assignees of Massachusetts corporations have, "so far as any

property rights or credits within the Commonwealth, or which may be put into their possession by said corporation, are concerned." This section also provides that it shall be the duty of such assignees "so far as practicable to distribute such assets in such a manner that all creditors of the insolvent corporation, whether within this State or elsewhere, shall receive proportionate dividends out of the assets of said corporation, whether the same are within the control of said assignees or not."

It is plain that the bringing of this bill and the appointment of a receiver did not dissolve attachments of the property of the society theretofore made, whether in this Commonwealth or elsewhere, if the attachments were valid, upon which we express no opinion. *Hubbard* v. *Hamilton Bank*, 7 Met. 340. *Taylor* v. *Columbian Ins. Co.* 14 Allen, 353. *Folger* v. *Columbian Ins. Co.* 99 Mass. 267. *Kittredge* v. *Osgood, post,* 384. See *Burdon* v. *Massachusetts Safety Fund Association*, 147 Mass. 360.

We do not deem it necessary to consider the general powers and duties in this Commonwealth of receivers of corporations appointed by the courts of other States which created the corporations, or of ancillary receivers appointed by the courts here. If this society be a corporation, it does not appear to have any assets in the State of New Hampshire, or any place of business there, or any officers resident there. The only place of business of the society appears to have been in this Commonwealth, and all of its officers, and, so far as we know, all of its members, although not all of the members of subordinate lodges, were inhabitants of this Commonwealth. It is not contended by any of the appellants that the receiver appointed by the Superior Court here has not authority to receive and distribute all the assets of the society found within the Commonwealth, and if an assignment of the property of the society found outside of the Commonwealth has been made by the society to the receiver pursuant to the order of the court, then he stands in the position of an assignee of such property. How far the courts of other States will recognize his rights within those States, it is not for us to decide. Some property has been transmitted from persons and lodges in other States to the receiver here, and is now held by him. All the property held by him with perhaps the exception of certain articles of furniture, and certain small amounts

of money, if any can be identified as belonging to the general fund, was, as we understand, under the constitution and by-laws, the property of the Supreme Lodge, which held it for the benefit of all holders of certificates, no matter to what subordinate lodges the holders belonged. It seems to us that the Superior Court rightly considered that the society, whether it be regarded as a corporation or an unincorporated association, had its actual home in this Commonwealth, and that its funds held for the benefit of holders of certificates should be distributed here so far as the court has power to do this, and that it is equitable and more nearly according to the analogy of the provisions of St. 1890, c. 321, that, so far as is practicable, the moneys belonging to the benefit and reserve funds in the hands of the receiver should be proportionately distributed among the holders of certificates without regard to the place of residence of such holders. If any of such holders have property of the society in their possession, or have attached property in this or other jurisdictions, or have proved claims against property of the society in other jurisdictions, we are of opinion that it is not practicable, with a view to equality, that they should be admitted to prove their claims against the property in the hands of the receiver here unless they account for the property in their possession, or discharge such attachments, or cancel such proofs, or unless the property which they have attached or against which they have made proof of claims is put into the hands of the receiver here for equitable distribution. If the property attached is put into the hands of the receiver here, and the attachment was valid, the question whether the attaching certificate holder's claim is to be preferred to the extent of the amount of the property attached is not before us in this case. See, however, *Kittredge* v. *Osgood, post,* 384. If the society is regarded not as a corporation, but as a voluntary association of individuals doing business in this Commonwealth under a constitution and by-laws to which all the members have assented, the members of the association must be regarded either as partners or co-owners of the property. *Ricker* v. *American Loan & Trust Co.* 140 Mass. 346. *Gott* v. *Dinsmore,* 111 Mass. 45.

We know of no better rule for determining who the members

of this association or of the subordinate lodges were at the time the bill was filed, than to determine this according to the constitution and by-laws governing the Supreme Lodge and the subordinate lodges. *Danbury Cornet Band* v. *Bean,* 54 N. H. 524. *Lafond* v. *Deems,* 81 N. Y. 507. If the association is not strictly a partnership, the property on the dissolution must be distributed among the members in much the same manner as if it were a partnership. See *Gorman* v. *Russell,* 14 Cal. 531.

Considering the nature of the whole organization, whether the Supreme Lodge and the subordinate lodges be regarded as one association or as different associations, or the Supreme Lodge be regarded as a corporation with the power to constitute subordinate lodges, we think that the court rightly gave effect to the constitution and by-laws as binding on the members, and that there is no more equitable rule for determining who the members were when the bill was filed than the one adopted by the Superior Court after the analogy of the decision in *Fogg* v. *United Order of the Golden Lion, ubi supra.* See *Buswell* v. *Order of the Iron Hall, ante,* 224.

The second paragraph of the decree should be modified in accordance with this opinion, and the Superior Court should proceed in accordance therewith.

*So ordered.*

*B. B. Johnson,* ( *W. C. Parker* with him,) for certain certificate holders.

*O. L. Bosworth,* for other certificate holders, was permitted to file a brief.

*G. W. Anderson,* for the receiver.