AMERICAN LOAN AND TRUST COMPANY *vs.* NORTHWESTERN
GUARANTY LOAN COMPANY & others.

Suffolk.    January 21, 27, 1896. — June 15, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Distribution of Trust Fund among Claimants of Different Classes.*

By an indenture of trust executed by the A. Company and the B. Company, it was
provided that, whereas the A. Company was engaged in the business of selling,
negotiating, and guaranteeing mortgage notes and other securities, the creation
of a fund for the further protection of the holders of such guaranties was desira-
ble, it deposited with the B. Company securities to hold in trust " as collateral
security for the faithful keeping and performance by the A. Company of its
guaranties now or hereafter made during the continuance of this agreement,"
and agreed that on default by it upon any of its guaranties, and written demand
made upon the B. Company by any party in interest, the B. Company should
sell such of the securities held by it as should be necessary to satisfy and pay
within sixty days after such demand and receipt of proceeds the guaranties so
defaulted upon.  Subsequently the A. Company, while continuing this business,
entered into a distinct business of selling debenture bonds secured by other trust
funds, some of which were held by the B. Company as trustee, and which were
of a different nature from those composing the first trust.  Every debenture
bond sold contained a certificate of a trustee that a trust fund had been de-
posited for the benefit of the holders of the debentures of that series, but the
first trust fund was not mentioned in that connection by the B. Company, which
certified the debentures without reference to it, and until after the failure of
the A. Company no claim was made against such fund.  The A. Company be-
came insolvent, and under a bill in equity filed by the B. Company to secure
the proper distribution of the first trust fund, which was insufficient for the pay-
ment of all claims in full, three classes of claims were proved, the first of which
was based upon guaranties made by the A. Company of short-time negotiable
promissory notes purchased by claimants in good faith before maturity and
before the failure of the company, and the last two of which were based upon
guaranties made in the subsequent distinct business of selling debenture bonds.
*Held,* that the claims of the first class were entitled to be paid out of the fund
before claims of the second and third classes, and that the claims of the first
class, as between themselves, were not entitled to priority or to payment in full
because of any written demand upon the trustee, but were to be paid *pro rata.*

BILL IN EQUITY, filed August 2, 1893, to obtain the instruc-
tions of the court as to the distribution of a fund deposited by
the Northwestern Guaranty Loan Company, one of the defend-
ants, in trust with the plaintiff.

The case was referred to a master, and upon the coming in of
his report was, by *Holmes,* J., reserved thereon, and the excep-

tions thereto, for the consideration of the full court.    The material facts appear in the opinion, and in notes by the reporter.

*L. S. Dabney,* for the plaintiff.

*C. M. Reed,* for the Commonwealth Title Insurance and Trust Company and another.

*S. A. Foster,* for the National Bank of Redemption of Boston and others.

*A. E. Denison,* for the North National Bank.

*H. R. Bailey,* for the Continental National Bank of Memphis.

BARKER, J.    Under an agreement of May 8, 1886, the plaintiff holds a trust fund, established by the Northwestern Guaranty Loan Company.    The distribution of this fund is the subject of the suit.    The value of the fund is not less than $70,000, and not more than $75,000, while the amount of claims is in excess of $2,800,000.    The case was reserved for the determination of the full court upon the report of a master, and upon exceptions thereto.

The claims proved are of three general classes.    First, claims based upon guaranties made by the Northwestern Guaranty Loan Company of short-time negotiable promissory notes of third persons, purchased by the claimants of that company in good faith before the failure of the company, and before the maturity of the notes, each of the notes when purchased bearing the guaranty of the company.    The amount of these claims proved before the master is $1,045,846.    Second, claims based upon guaranties by the same company of mortgage notes held by trust companies to secure the payment of debenture bonds issued by the Northwestern Guaranty Loan Company, or by the Minneapolis Debenture Loan Company, which debenture bonds are in the hands of third persons, who have purchased them in good faith.    The amount of these claims proved is $1,759,099.67, of which amount $1,200,465.67 was proved by the plaintiff.    Third, claims based upon debenture bonds of the Northwestern Guaranty Loan Company and of the Minneapolis Debenture Loan Company, held in good faith, each bond bearing the guaranty of the Northwestern Guaranty Loan Company.    These claims amount to $7,300.

1. The master's report finds that the claims of the first class are entitled to payment out of the fund before claims of the

second and third classes, and we consider first whether that conclusion shall be disturbed.

It is contended by the parties who have proved claims of the second and third classes that the guaranties which they hold are equally within the language of the trust agreement, and that they are equally entitled to have them made good out of the fund.

The parties who executed the trust agreement are the Northwestern Guaranty Loan Company and the plaintiff. The instrument recites, in substance, that whereas the Northwestern Company is engaged in the business of selling, negotiating, dealing in, and guaranteeing and otherwise securing mortgage notes and other securities and evidences of indebtedness, and it is desirable that a fund be set apart and separate by it for the further assurance and protection of the holders of any and all guaranties now or hereafter made by it during the continuance of the agreement, it therefore deposits with the plaintiff securities of the market value of not less than $100,000, to hold in trust for the following uses and purposes, and for no others. Then follow eleven paragraphs defining the trust and providing for its administration, the first of which is as follows: " To hold said securities as collateral security for the faithful keeping and performance by the said party of the first part [the Northwestern Company] of its guaranties now or hereafter made during the continuance of this agreement." From the report it appears that, when the agreement of May 8, 1886, was made, the business in which the Northwestern Company was then engaged consisted in guaranteeing and selling the obligations of other persons and corporations ; and that at some time after the creation of the trust the company, while continuing this business, entered into another and entirely distinct business, that of selling debenture bonds, for the security of which it created other trust funds, distinct from the present fund, and held under other trust indentures, under some of which the plaintiff was the trustee, and under others of which other trust companies acted in that capacity, and for which trusts funds of a different class from some of those of which this fund was composed were required.

The claims of the first class are by national banks, savings banks, and other moneyed institutions and individuals, who have

purchased of the Northwestern Company short-time negotiable promissory notes guaranteed by that company and sold by it in the prosecution of the same kind of business in which the company was engaged when this agreement was made, and which business the company intended to continue. The claims of the second and third classes grow out of the entirely distinct business, afterwards entered into, of selling debenture bonds to secure the payment of which the new and distinct trusts were founded. In the transaction of this new and distinct business, the trustee of the present trust, as trustee of some of the debenture bond trusts, certified the debentures without reference to the condition of the fund with which we are now dealing. The debenture trust funds consisted of mortgages and mortgage notes, guaranteed by the Northwestern Company. Payment of these mortgage notes was frequently defaulted, and they remained unpaid for long periods, but no attempt was made to have the guaranties upon them satisfied out of this trust. From the time when this trust was established until after the failure of the Northwestern Company, in May, 1893, no claim or demand was ever made against this fund by any one. The Northwestern Company never furnished any of the semiannual lists of its " outstanding and existing guaranties " required by the third paragraph of the agreement.*   No notice, written or other-

---

* The third, fourth, and fifth paragraphs of the trust agreement were as follows :

" 3. Said first party [the Northwestern Guaranty Loan Company] shall, on the first day of May and November in each year during the continuance of this agreement furnish said second party [the American Loan and Trust Company] a list of all then outstanding and existing guaranties made by the first party, verified by its secretary, which list shall be conclusive evidence to said second party of such outstanding and existing guaranties.

" 4. Upon default by said first party upon any of its guaranties, and written demand made upon said second party to make good the same by any party in interest, the said second party shall sell such of said securities so deposited with it as shall be necessary for that purpose, and out of the proceeds thereof shall satisfy and pay the guaranties so defaulted upon, within sixty days after such demand and receipt of proceeds as aforesaid, upon its taking the receipts of the holders of the said defaulted guaranties therefor and assignments running to said first party of the securities so defaulted upon and taken up by said second party.

" 5. Whenever the market value of said securities so held by the second party falls below the sum of $100,000, whether by depreciation in the market

wise, other than the making of the agreement, was given to holders of any guaranties of the Northwestern Company of any particular notes whose guaranty was intended to be secured by this fund. Upon every debenture bond sold was the certificate of a trustee, stating that a trust fund consisting of real estate securities and other securities of greater value than the amount of all the debentures of the series bearing the certificate had been deposited for the benefit of the holders of the debentures of that series. The trust fund so mentioned was not this trust.

In the course of business between the Northwestern Company and the plaintiff and the other trustees for holders of debentures under the various debenture trusts, demand for interest and principal of the mortgages deposited as security was made by the Northwestern Company, and not by the trustees; but notice that such mortgages were overdue was given to the Northwestern Company by the trustees of the debenture trusts, and it was their practice to call upon that company for other mortgages and notes to be substituted for those in default.

We find in the master's report no other facts which seem to bear upon the question whether the present fund should be applied primarily to meet guaranties made in the transaction of the business of guaranteeing and selling short-time promissory notes, before meeting the guaranties issued in the debenture bond business. None of the facts recited militate against the master's finding. On the contrary, they support the theory that the design of the Northwestern Company was to create a trust for the special benefit of holders of such of its guaranties as it might put out in connection with sales of negotiable paper in the kind of business in which it was engaged when it instituted the trust, and justify the finding of the master that the claims of that class are entitled to payment out of the fund before claims of the second and third classes.

---

value of the same or by sale of any portion thereof to make good any guaranties defaulted upon by said first party, the said first party upon demand of said second party, hereby agrees to deposit with it securities the market value of which shall, with that of the securities then held by said second party, make good the sum of $100,000."

We do not deem it necessary to consider whether this finding would be supported by the fact that all the claims of the first class were upon notes purchased upon the faith and credit of this trust, and that all the other claims grew out of transactions in which the claimants had not relied upon this fund, but upon other and independent security. If such were the fact, it might well be contended that the instrument might be fairly considered as an offer which, if open to all, should nevertheless enure first to the benefit of those who have accepted and acted upon it. If the offered security is exhausted in meeting the claims of those who have accepted and acted upon the faith of an offer, it does not seem inequitable to postpone to such claims the claims of others who might also have accepted and acted upon the faith of the offer, but did not in fact do so.

2. The master finds that the claims entitled to participate in the fund are to be paid *pro rata*, and that no claimant is entitled to priority or payment in full before any other claimant, because of any written demand upon the trustee.* It is contended that this finding is wrong, and that the claims entitled to share in the fund are to be paid in the order in which demands were made upon the plaintiff, under the provisions of the fourth paragraph of the trust agreement.

We are of opinion that the master is right. The trust agreement nowhere speaks of the priority of one claim over another. It does not state in terms that, if the fund proves too small to satisfy all claims, those first demanded shall be paid in full. No doubt it would be the duty of the trustee, if a demand under the fourth paragraph had been made, to proceed to sell securities, and within sixty days after the receipt of the proceeds to satisfy and pay the defaulted guaranty without regard to possible future claims upon guaranties not in default. In every such case the Northwestern Company, under the fifth paragraph of the agreement, must deposit fresh securities to make good the depletion of the fund; and until default upon a guaranty it was the duty of the trustee to pay over to the Northwestern Com-

---

* There was evidence before the master that on May 16, 1893, after the failure of the defendant, the plaintiff, as trustee under the debenture trusts, made demand upon itself as trustee of the guaranty fund in suit, as required in the fourth paragraph of the trust indenture.

pany the income of the trust fund. These provisions regulate justly the administration of the fund in the ordinary course of affairs. But we cannot read into the paragraph a provision that, if the fund is insufficient to pay all claims known to exist against it, claims demanded shall be paid in full in the order of demand. This would defeat the plain general purpose of the agreement, which is to create a trust for the benefit of the holders of any and all guaranties to which it applied that might be outstanding. The provisions for written demand, and for payment within sixty days after the trustee is in receipt of the proceeds of sales, are not to be construed as giving a preference to one or more claims over other claims existing at the same time and known to the trustee. All holders of defaulted guaranties who make the requisite demand are entitled to share in the fund; and if the fund is too small to satisfy all, they must share *pro rata*. The agreement was intended as security both in the ordinary course of business and in times of stress and failure; and we cannot read into a provision intended to regulate the ordinary administration of the fund a provision not found there in terms, which would make of a trust, intended for the equal protection of all the outstanding guaranties of a certain class, a lottery in which the holders of the guaranties first defaulted could exhaust the whole fund, to the exclusion of the other beneficiaries. The claims against the fund are not payable upon demand, but within sixty days after demand and receipt by the trustee of the proceeds of sales of deposited securities. The demands may be upon different days, but the claims may become payable at the same time, determined by the receipt of the proceeds, and it is not stated whether the securities have yet been sold and the proceeds received by the plaintiff.

The master's construction of the instrument is in accord with the principles which we have followed in dealing in equity with claims to priority of satisfaction. We do not assent to the doctrine that priority in the maturity of a claim against a fund to be distributed in equity gives the right to preference or priority of satisfaction, and we have disregarded priority of maturity and priority of assertion or demand, where a lien upon the fund has not been otherwise established. See *Eastman* v. *Foster*, 8 Met.

19; *Franklin County National Bank* v. *First National Bank of Greenfield*, 138 Mass. 515; *Mason* v. *Pomeroy*, 151 Mass. 164; *Fogg* v. *United Order of the Golden Lion*, 159 Mass. 9, 16; *Buswell* v. *Order of the Iron Hall*, 161 Mass. 224, 232; *Garham* v. *Mutual Aid Society*, 161 Mass. 357, 366; *Kittredge* v. *Osgood*, 161 Mass. 384; *Merrill* v. *Commonwealth Ins. Co.*, *ante*, 238.

These results, with the fact that the fund will be exhausted in paying *pro rata* the claims of the first class, make the other exceptions to the master's report immaterial.

There will be a decree for the distribution of the fund *pro rata* to the claims of the first class proved before the master.

*So ordered.*