FREDERICK T. JONES *vs.* ARENA PUBLISHING COMPANY.

Suffolk.   December 14, 1897. — April 16, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Receiver — Distribution of Assets — Claims entitled to Priority of Payment.*

Upon a bill in equity for the appointment of a receiver to take possession of the
property of a corporation and distribute its funds among its creditors, the court,
without intending to prescribe a fixed rule, adopted the date of the appointment
of the receiver for adjusting the rights of the parties on the ground that it would
be fairer than the date of the filing of the bill.

Upon a bill in equity, brought before the enactment of St. 1897, c. 400, for the ap-
pointment of a receiver to take possession of the property of a corporation and
distribute its funds among its creditors, unpaid taxes on the personal property
assessed prior to the receivership, and debts due to operatives, clerks, and ser-
vants for labor prior to the receivership, are entitled to priority. FIELD, C. J.,
ALLEN & MORTON, JJ., dissenting.

Upon a bill in equity for the appointment of a receiver to take possession of the
property of a corporation and distribute its funds among its creditors, the busi-
ness having gone on in good faith and without being in any way affected by
the pendency of the bill until the appointment of the receiver, notes given in
the prosecution of the business up to that time should be allowed whenever they
mature, with the addition or rebate of interest as in insolvency proceedings.

Upon a bill in equity for the appointment of a receiver to take possession of the
property of a corporation and distribute its funds among its creditors, there is
no reason why a claim should have priority, the work for which priority of pay-
ment is claimed having been done in pursuance of a contract with the corpora-
tion made before the filing of the bill, and not at the request of the receiver nor
for the purpose of aiding the court either in keeping the business alive or ad-
ministering the assets of the corporation.

BILL IN EQUITY, filed November 16, 1896, praying that the defendant be enjoined from the transaction of business, and that a receiver be appointed to take possession of the property, collect debts, and distribute the funds ratably among the creditors who should prove their claims. Trial in the Superior Court, before *Sheldon*, J., who, at the request of the parties, reported the case for the determination of this court, in substance as follows.

The defendant published the monthly magazine called The Arena, 30,000 copies of which were printed each month, and also printed books, having accounts with many authors. In November, 1896, one Jones, an employee of the company, obtained a judgment against it for $690.97, and for $7.82 costs of suit, on which execution issued and was served; and the same being wholly unsatisfied, Jones filed a bill in equity for relief against the company, reciting that it was brought " in behalf of himself and all other unsatisfied creditors of the defendant corporation, who shall join herein and become a party plaintiff to this bill."

The bill further recited that the defendant owed about $58,000 upon notes, and about $7,800 on sundry current bills, mostly to citizens of Massachusetts; that it was " practically insolvent "; that the peculiar nature of the assets of the company justified a continuance of the monthly publication of the magazine, and the protection of its contracts with various authors, in order to maintain the good will of the business, whether for purposes of a reorganization of the company, or for a sale of its assets to satisfy the outstanding debts of the company; that divers suits were about to be instituted against the company, as a result of which the assets of the company would be of little or no value " if sought to be reached at law, and if the said corporation should cease to do business and its assets should be disposed of by proceedings in insolvency, or under execution at law; and that if a receiver should be appointed to take charge of the business and assets of the corporation, and continue, subject to the approval of this court, the publication of the magazine," and divers books, it would be more advantageous for all concerned.

No attachment of property was made by the plaintiff, either

under the bill or under the proceedings in the court, when ob-
taining judgment against the defendant. An order of notice was
issued on November 23, 1896, to show cause why a temporary
injunction should not be granted, and why a receiver should not
be appointed as prayed for in the bill, the order being made
returnable on December 1, 1896, which order of notice was duly
complied with. No answer was filed by the defendant, but it
was represented by counsel at the hearing to show cause. An
injunction was issued, and Mr. Alfred D. Chandler was appointed
receiver, on December 1, 1896, and duly qualified, and took pos-
session of the company's property on December 2, 1896. ·

Under orders of the court the receiver continued the publica-
tion of the magazine for the two months of January and Febru-
ary, 1897, and under orders of the court, on January 23, 1897,
he sold the property at public auction for $13,400.

The decree for the proof of claims was made on December 24,
1896, extended on January 29, 1897, and expired, by extension,
on March 1, 1897. About one hundred and sixty claims were
filed, representing about $65,000.

On March 23, 1897, the receiver filed his petition in the Su-
perior Court for instructions upon certain questions necessary
for determination before a final distribution of the funds on
deposit could be made.

· 1. What date shall be taken to fix the rights of the parties,
the date of the filing of the bill, November 16, 1896, or the date
of the appointment of the receiver, December 1, 1896 ?

The judge directed a decree that the date of the appointment
of the receiver, December 1, 1896, was to be taken to fix the
rights of the parties.          . ·

· 2. Shall unpaid taxes on the personal property of the defend-
ant, assessed prior to the receivership, be entitled to priority ?

The city of Boston duly filed its proof of claims with the
receiver for these taxes, amounting to $64.50, on February 25,
1897, the said proof containing no claim for a priority in favor
of the State, county, or city.

On January 23, 1897, all the property of the defendant was
sold by public auction, and the receiver's bill of sale therefor
was duly executed and delivered to the purchaser on February 3,
1897, who thereupon took possession of the property, no action

by way of suit or distress for the collection of the taxes upon the personal estate of the company having been at any time taken by the city of Boston.

The judge directed a decree that unpaid taxes on the personal property of the defendant, assessed prior to the receivership, were to be entitled to priority.

3. Shall salaries, wages, or compensation, due to an employee of the Arena Publishing Company prior to the receivership, be entitled to priority, and if so to what amount and for how long a period preceding the receivership?

The judge directed a decree that unpaid wages due to operatives, clerks, and servants, to an amount not exceeding one hundred dollars for labor performed within one year of the appointment of the receiver, but no other wages to employees of the defendant were to be entitled to priority.

4. Shall a promissory note of the defendant, made between the date of the filing of the bill and the date of the appointment of the receiver, be proved and allowed?

5. Shall a promissory note of the defendant, which matured on the date of the filing of the bill, or which matured between the date of the filing of the bill and the date of the appointment of the receiver, or which matured at any time thereafter, be proved and allowed?

The greater part of the indebtedness of the company was in the form of promissory notes aggregating over $50,000. One or more notes were issued by the company in the interim between the filing of the bill in equity, on November 16, 1896, and the date of the appointment of the receiver, on December 1, 1896. Most of the notes issued by the company matured at or after the date of the filing of the bill, many of them being notes given in renewal of old notes.

Upon the fourth and fifth questions the judge directed a decree that promissory notes of the defendant, made between the date of the filing of the bill and the date of the appointment of the receiver, or which matured on the date of the filing of the bill, or at any time thereafter, if made before the appointment of the receiver, were to be proved and allowed like other claims, but with adjustment of interest to the date of the appointment of the receiver.

6. Shall a claim of Skinner, Bartlett, and Company, for $1,063.29 for printing and binding 30,000 copies of the Arena magazine for December, 1896, be entitled to priority, the said claim not being presented in this specific form to the court until April 27, 1897, the time for filing claims having expired on March 1, 1897, but the said claim being included in the general claim of said Skinner, Bartlett, and Company for $7,801.68, duly filed prior to March 1, 1897, of which general claim $6,092.62 are in promissory notes of the defendant?

The magazines were delivered by Skinner, Bartlett, and Company in November, 1896, prior to the appointment of the receiver, in accordance with a written contract, partly to the defendant, and partly to the New England News Company in Boston, as a purchaser from the defendant. Many of the magazines so delivered to the defendant were sent to subscribers prior to the appointment of the receiver, and the remainder became a part of the assets in the hands of the receiver, which were sold by him under the order of the court. The New England News Company paid the receiver for that portion of the magazines which were sold and delivered to the said News Company prior to the receiver's appointment. If Skinner, Bartlett, and Company had not delivered the magazines, the continuous publication of the Arena magazine would have been prevented or materially delayed, and the value of the assets correspondingly affected.

The judge directed a decree that the claim of Skinner, Bartlett, and Company was not entitled to priority.

From the decrees entered in accordance with the above directions, Skinner, Bartlett, and Company appealed.

The case was argued at the bar in December, 1897, and afterwards was submitted on briefs to all the justices.

*S. W. Creech*, for Skinner, Bartlett, and Company.

*W. S. Pinkham*, for general creditors of the defendant.

*A. D. Chandler*, receiver, submitted the case on a brief.

BARKER, J.   The first question is whether the rights of the parties should be adjusted as of the date of the filing of the bill, or as of the date of the appointment of the receiver. In similar bills, where the jurisdiction is given by statute, the usual course here has been to adopt the date of the filing of the bill, or of the issuing of the injunction. *Atlas Bank* v. *Nahant Bank*, 23

Pick. 480.  *Colt* v. *Brown*, 12 Gray, 233.  *Burdon* v. *Massachusetts Safety Fund Association*, 147 Mass. 360.  *Merrill* v. *Commonwealth Ins. Co.* 166 Mass. 238.  *Williams* v. *United Reserve Fund Associates*, 166 Mass. 450.  The date of the filing of the bill has also been adopted in some instances where the bill was filed under general equity powers. See *Fogg* v. *United Order of the Golden Lion*, 156 Mass. 431; *Garham* v. *Mutual Aid Society*, 161 Mass. 357.

But in *Merrill* v. *Commonwealth Ins. Co.*, *ubi supra*, it was said that the court had no occasion then to consider what the rule should be in cases where receivers are appointed under general equity powers, and we think that there is no settled rule which forbids the adoption of the date of the appointment of the receiver where the bill is entertained under general equity powers.  The more usual rule elsewhere seems to be that in such cases the date of the appointment of the receiver should be adopted.  High, Receivers, §§ 136 *et seq.*  Beach, Receivers, (2d ed.) §§ 217 *et seq.*  Smith, Receiverships, § 17.  Gluck & Becker, Receivers, § 89.  Thompson, Corp. § 6919.  Without intending to prescribe a fixed rule, we think that in the present case the adoption of the date of the appointment of the receiver will be more fair to all parties than that of the filing of the bill, and that the decree in this respect should be affirmed.  There was no injunction issued upon the filing of the bill, the corporation continued its business as usual, and those who dealt with it in the interim did so without being influenced, so far as appears, by the fact that the suit was pending, and in the interim no attachments or other liens were placed upon the property.  In this particular case, the only effect of holding that the proceedings should relate back to the filing of the bill would be to raise the question whether bills contracted by the corporation during the interim, not upon faith in the proceedings, but upon the ordinary credit of the corporation, should be treated as if incurred by the receivers in execution of the powers afterwards given to them, or should go wholly unpaid.

The questions whether taxes and debts due to workmen for labor are entitled to priority may be considered together.  The relief sought is merely the getting in and the distribution of what are known in equity as legal assets.  "In the course of

the administration of assets, courts of equity follow the same rules in regard to legal assets which are adopted by courts of law, and give the same priority to the different classes of creditors which is enjoyed at law, thus maintaining a practical exposition of the maxim, '*æquitas sequitur legem.*' " Story, Eq. Jur. § 553. *Morrice* v. *Bank of England*, Cas. temp. Talbot, 218, 220, 221. And it makes no difference whether the general rules and policy of the law to which equity conforms are stated in the common or the statute law. Pomeroy, Eq. Jur. § 425. It would be a plain injustice if a general creditor, by resorting to equity for the administration of his debtor's goods, merely for the reason that by the aid of equity the amount to be divided would be larger, could gain a further advantage by reducing to the level of common creditors workmen whose wages would have priority if the assets were left to be administered at law, or could thus place his own debts upon an equality with taxes which would have been paid in full had not equity intervened. The defendant corporation was subjected to our insolvency law by force of St. 1890, c. 321, and if equity had not come in to conserve and distribute its legal assets, the wages of its workmen and the taxes due from it would have priority in the distribution of its assets by the usual agencies of common law. Those agencies could not keep its business going at the time when the bill was filed. For this reason only, the creditors, merely to increase the amount of the fund, asked equity to interfere in behalf of all creditors alike. It would be unjust if that interference should be at the sole cost of the workmen and of the public, through depriving claims for labor and taxes of the priority of payment which they would have had if equity had not intervened. As a precedent in this Commonwealth, the question is not now of great importance, as the Legislature by St. 1897, c. 400, has declared that in the settlement of estates by receivers such claims shall have priority. In the present case that statute does not control, but without it, in administering merely legal assets because our aid has been asked for a merely incidental matter, we may say that wages and taxes shall not lose the priority they would have at law merely by the change in the tribunal which deals with the assets.

In *Commonwealth* v. *Phœnix Bank*, 11 Met. 129, the decision

was upon other grounds, and this court has said, in holding that the same rule should be applied in ascertaining the balances due between a corporation whose affairs are being wound up in equity by receivers and its creditors and debtors as when its assets were to be dealt with in bankruptcy or insolvency, that equity will not permit the general rule to be affected by the question by whom or in what forum the proceedings are set in motion, and also that in ascertaining the amount due to any creditor the court will ·follow as far as practicable the rule established by statute in proceedings in insolvency or bankruptcy. *Commonwealth* v. *Shoe & Leather Dealers' Ins. Co.* 112 Mass. 131. *Commonwealth* v. *Hide & Leather Ins. Co.* 119 Mass. 155. Rather than to commit an injustice in the administration of the assets, the court might well decline to distribute the fund, and require the institution of proceedings in insolvency in order that the fund might be distributed by assignees. But we think the court has power to recognize priorities which would have obtained if the assets had been administered in common law tribunals, and that the Superior Court was right in so holding. The justice of the Superior Court gave directions upon these points which followed the insolvency statutes, and gave only such preferences as would have been given if the assets had been distributed in insolvency.

The directions upon the other questions were right. The business went on in good faith and without being in any way affected by the pendency of the bill until the appointment of the receiver. Notes given in the prosecution of the business up to that time should be allowed whenever they mature, with the addition or rebate of interest, as in insolvency proceedings. There is no reason why the claim of Skinner, Bartlett, and Company should have priority. The printing and binding for which they claim priority of payment was done in pursuance of a contract with the corporation made in 1896, and not at the request of the receiver nor for the purpose of aiding the court either in keeping the business alive or administering the assets of the corporation. *Decree affirmed.*

FIELD, C. J. I am unable to assent to the opinion of the majority of the court concerning the priority or preference to

be given to certain debts due from the defendant corporation. There was no statute in force when the suit was commenced, giving priority of one unsecured debt over another, which in terms seems to me applicable to the proceedings. The practice has obtained in the courts of the United States, in cases of receiverships of railroad corporations, particularly in suits brought by mortgagees for a foreclosure, for the court to authorize the payment as preferred debts of certain claims against the railroad company which had accrued before the appointment of the receiver, or before the bill was filed, and these claims have been allowed, not only against income, but sometimes against the corpus of the property in the hands of the receiver. The extent to which this practice has prevailed appears in the cases cited in Beach, Receivers, (Ald. ed.) §§ 394 *et seq.* There is no precedent for any such practice in this Commonwealth. So far as I am aware, this practice has obtained only in receiverships of railroad companies, and the decisions are not uniform upon the specific grounds on which the practice can be justified, or upon the extent to which it should be carried; and the practice has been much criticised. The practice · has been defended largely upon the ground of the quasi public nature of railroad corporations, and it has not prevailed in receiverships of private corporations other than railroads. *Wood* v. *Guarantee Trust & Safe Deposit Co.* 128 U. S. 416. *Raht* v. *Attrill,* 106 N. Y. 423. *Merchants' Bank* v. *Moore,* 106 Ala. 646. *Kneeland* v. *American Loan & Trust Co.* 136 U. S. 89. In all the cases of receiverships before this court, so far as appears in the reports, there is no precedent for the allowance against a corporation of debts as preferred when the debts were due at the time when the bill was filed, unless the debts were liens on or were secured by the property of the corporation, or were entitled to a preference by the provisions of some statute applicable to the case, or by the general law. There is, I think, no general power in a court of equity to create a preference of one unsecured debt over another, when the debts existed at the time when the suit was brought, and by the general law were equally entitled to be paid without priority or preference on the part of one over another. Such a power is in its nature a legislative power. A court of equity cannot create rights of property where none previously existed.

If by the common law of Massachusetts there is a prerogative right of priority in favor of the Commonwealth and of its municipalities for the payment of debts or taxes due them, then the taxes should be preferred; but I doubt if in this Commonwealth either the State, county, or city is entitled to priority of payment for debts or taxes unless it is given by statute, or unless there is a lien on property. It is not contended that any such priority at common law exists in favor of the wages of operatives, clerks, and servants. It seems to me impossible to construe the special provisions of the statutes relating to insolvency concerning preferred debts as intended to be applicable to proceedings under the general equity powers of this or the Superior Court. The provisions of those statutes dissolving attachments made not more than four months before the time of the first publication of the notice, etc., have been held not applicable to proceedings similar to the present. *Kittredge* v. *Osgood*, 161 Mass. 384. *Merrill* v. *Commonwealth Ins. Co.* 166 Mass. 238. Those statutes I think were passed solely with reference to the statutory proceedings in insolvency, and the repeal of those statutes would have no effect upon the present proceedings. The subject in the settlement of estates by receivers is now regulated by St. 1897, c. 400, which was passed after the present suit was begun, and after the time had expired for the proof of claims. Whether in the present case a court of equity should not have declined to take jurisdiction on the ground that the proper remedy was in insolvency I do not consider, as that question is not before the court. See *White* v. *White*, 169 Mass. 52; *Pond* v. *Framingham & Lowell Railroad*, 130 Mass. 194.

It is true that equity usually follows the law in the distribution of legal assets, but by this is meant the general law, whether it be common law or statutory law. Provisions of statute applicable to special proceedings are not a part of the general law. Many of the provisions of our statutes relating to insolvency were in their origin derived from the practice of courts of equity, and in the marshalling of assets and securities equity now often adopts a procedure analogous to the procedure in insolvency. *Commonwealth* v. *Shoe & Leather Dealers' Ins. Co.* 112 Mass. 131. *Merchants' National Bank* v. *Eastern Railroad*, 124 Mass. 518. *Bristol County Savings Bank* v. *Woodward*, 137 Mass. 412.

*Franklin County National Bank* v. *First National Bank of Greenfield,* 138 Mass. 515.   But that the wages of operatives, clerks, and servants should be preferred is no part of the general doctrine of equity concerning the marshalling of assets and securities.   In the administration in equity of the assets of a partnership, although the firm debts are preferred to the individual debts of the partners in the distribution of the firm assets, I am aware of no decision which prefers debts due to operatives, clerks, and servants for wages unless the preference is authorized by statute.

The contention in the present case must be that a court of equity has the power to create preferences in such a suit as the present, according to its opinion of what on the whole is equitable, and that in the exercise of this power it is equitable to follow the statutory provisions relating to estates in insolvency. Pub. Sts. c. 157, § 104.   I agree that, if a court of equity has the power in the case of insolvent corporations, there are strong reasons of policy why it should follow in this respect the statutes relating to insolvency, but I have found no authority for the existence of any such power in the case of receiverships of private business corporations, such as the defendant company. I think that, where there is no lien and no statute authorizing priorities which can be construed as applicable to the proceedings, and the priorities are not sanctioned by the general law, debts due to operatives, clerks, and servants for wages are not entitled to priority in proceedings in equity.   It has been considered in Massachusetts that, when statutes creating priorities cannot be construed so as to be applicable to proceedings in equity, courts of equity usually follow the maxim that equality is equity.   *Commonwealth* v. *Phœnix Bank,* 11 Met. 129.   *Cochituate Bank* v. *Colt,* 1 Gray, 382.   *Ellis* v. *Boston, Hartford, & Erie Railroad,* 107 Mass. 1.   *In re Heywood,* [1897] 2 Ch. 593.   *Lyon* v. *Guthard,* 52 Mich. 271.   *In re Ranger,* 26 N. Y. Supp. 866.   See *American Loan & Trust Co.* v. *Northwestern Guaranty Loan Co.* 166 Mass. 337.

Justices ALLEN and MORTON concur in this dissent.