# CHARLESTON.

LAMB, TRUSTEE, &c. v. PANNELL'S ADM'R.

Submitted September 6, 1886.—Decided October 23, 1886.

1. The points decided in the cause of *Lamb, trustee* v. *Cecil, supra,* approved and applied. (p. 665.)

2. A director of an insolvent bank, who is also a depositor and the surety on notes held by the bank and not yet due, can not by an arrangement with the cashier, at a time when both he and the cashier know the bank is about to fail, if he can do so at any time, obtain from the cashier such notes in payment of the deposits due him from the bank. (p. 667.)

3. In a suit by the assignee of the bank for the proceeds of such notes such director and surety will not be entitled to set off the debt of the bank due him for deposits against the plaintiff's demand, except to the extent he may be entitled to dividends from the assignee on account of his debt against the bank. (p. 669.)

*W. P. Hubbard* and *J. E. McKennon* for appellant

*Caldwell & Caldwell* for appellees.

Snyder, Judge:

This cause was commenced in the circuit court of Ohio county February 23, 1876, and is the same that is reported in 25 W. Va. 298. In pursuance of the mandate of this Court the cause was returned to the said circuit court, in which the plaintiff on January 31, 1885, filed an amended bill, and such proceedings were had thereon, that on the 27th day of February, 1886, a final decree was rendered in favor of the plaintiff against the administrator of A. J. Pannell, deceased, for the sum of $13,180.50, being the amount of claim mentioned in the plaintiff's bill with interest thereon less certain dividends deducted therefrom. From this decree the said administrator obtained this appeal.

The amended bill, among other matters, alleges, that the said A. J. Pannell, on February 23, 1871, drew and presented for payment at the Wheeling Savings Institution his check for $7,841.50; that before he drew this check he, with Alexander J. Cecil and Alexander Laughlin, had as a committee of the board of directors, examined into the condition of the said bank and found that it was hopelessly insolvent, and it was this knowledge that induced him to draw and present said check for the purpose of drawing from the bank the money which he then had there on deposit; that for said check he then and there received the following discounted notes then owned by the bank, viz: a joint and several note of Wilson, Dunlevy & Co., and W. P. Wilson for $1,000.00, dated December 10, 1870, and due at four months, and two joint and several notes of W. P. Wilson, W. H. Dunlevy and A. J. Pannell, the one for $4,000.00, dated December 7, 1870, and due at six months, and the other for $3,000.00, dated February 5, 1871; that on the day following, February 24, 1871, the said Pannell returned these notes to the bank and the

amount thereof was credited to his deposit account and on that day he again drew from the bank these three notes then, not yet due, upon his two checks for $3,000.00 and $4,923.00, respectively, the two last named checks being presented to the bank by W. P. Wilson as the agent of said Pannell.

By an additional amendment the plaintiff alleged that the said Pannell was simply the surety for accommodation upon the aforesaid two notes for $4,000.00 and $3,000.00 respectively, that W. P. Wilson and W. H. Dunlevy were the principals therein as the bank well knew and as such received the whole consideration therefor, and that they were during the whole of the year 1871, and for a long time thereafter, solvent and could have been compelled by legal proceedings to pay the same.

Pannell's administrator in his answer, denies upon information and belief that said Wilson and Dunlevy were solvent and that they received the whole consideration for said notes of $4,000.00 and $3,000.00, or that said Pannel was only the surety on said notes and that the bank knew any such facts.

The same proceedings were had in this cause and substantially the same objections made to the pleadings, orders and decrees, that were made by the plaintiff and appellant in the preceding cause of *Lamb, Trustee* v. *Cecil*, which we have just decided. It is unnecessary, therefore, that we should here again state or consider those matters, but we simply refer to the opinion in that cause for the reasons and grounds upon which we have disposed of the similar questions in this cause. There is one question presented in this which did not arise in that cause, and that is, whether or not the appellant is entitled to have the amounts of the two notes aforesaid of of $4,000.00 and $3,000.00 respectively, set off against the claim sued for in this cause by the plaintiff?

This question was distinctly raised and fully argued on the former appeal, and would therefore seem to be *res judicata;* for, if the appellant was entitled to set off these notes, the plaintiff, at the most, would have been entitled to recover the value of the note for $1,000.00 only, yet the opinion of this Court on the former appeal states, that "the proof in the cause shows the right of the plaintiff to recover," and the

cause was remanded in order that the bill might be amended according to the proofs. I therefore think that the appellant is concluded by the former adjudication of this question; but inasmuch as it is not expressly noticed in the former opinion of this Court, I feel authorized to state the reasons, why in my judgment the appellant was not entitled to set off said notes against the demand of the plaintiff.

Both in reason and in law there is a wide difference between an insolvent corporation not using its franchises and a solvent one in the full exercise of all its powers and franchises. Neither the corporation itself, nor its stockholders have any *beneficial* interest whatever in its property or assets after it has become wholly insolvent and unable to exercise its franchises or carry on its business. By the insolvency of the corporation it is rendered incapable of pursuing the objects for which it was created. Its officers, or agents, properly cease to use its franchises after the insolvency has been ascertained; but their responsibility as to its assets do not cease. They continue to hold them as before—not for themselves, or for the use and benefit of the stockholders, but necessarially for its creditors. While it was solvent, and in the full enjoyment of its franchises, the entire beneficial interest in its property belong to the stockholders. But after the insolvency, while the *legal* ownership of the assets may continue as before, the *beneficial* interest of the stockholders clearly no longer exists. A state of insolvency pre-supposes that the capital-stock and assets of the corporation are insufficient to meet its liabilities to its creditors. The stockholders having incurred no personal liability for the debts have in point of fact no interest in the disposition of the corporate assets after the insolvency. In equity, therefore, as well as in law the beneficial interest in the assets must of necessity belong exclusively to the creditors. For the corporation, its officers and stockholders being simply the holders of the legal title and nothing more, the beneficial interest must belong to some other than they, and as there is none such other except the creditors, they must be the sole beneficial or equitable owners. The capital is the fund the creditors trusted, and to which, with the after-acquired property or assets, they can alone look for indemnity. Both stand pledged for the indemnity of the cor-

porate debts, and a court of equity will follow them into the
hands of the stockholders, or other persons, receiving them
with notice, for the benefit of creditors.   From this view, it
seems to be a necessary consequence, that after the admitted
insolvency of the corporation and the non-use of its franchises,
the officers and stockholders of the corporation, in whose
hands the assets remain, hold them  as *quasi* trustees for the
creditors,  who as the beneficial or equitable owners of such
assets occupy as to them  the  position of *cestuis que trust*.
*Man* v. *The Union Bank*, 4 Cold. 471 ; Hill on Trustees, 316 ;
*Bobins* v. *Embry*, 1 Sm. & M. Ch'y 207 ; *Richards* v. *Insurance
Co.*, 43 N. H. 263 ;  *Bradley* v.  *Farwell*, 1 Holmes 433 ; *Saw-
yer* v.  *Hoag*, 17  Wall.  610 ;  *Barings* v. *Dabney*, 19 Wall. 1 ;
*Jackson* v. *Ludeling*, 21 Wall. 616 ; Morawetz Corp., sec. 580.

The creditors, thus occupying the relation of *cestuis que
trust*,  have an equitable lien upon the  assets of the insolvent
corporation which may be enforced by them in a court of equity. ·
An assignment by the corporation of its property and assets
to a trustee does not  release this lien.    On the contrary the
trustee in such case represents both  the corporation  and the
creditors, that is, he represents both  the  legal and beneficial
ownership of the assets and also  the  rights and remedies of
the  creditors thereto.    Under  the laws  of  this Sate the
trustee is not only the holder of the title of the assignor but
he is treated as holding the assets transferred in the capacity
of a purchaser for value.    *Wickham* v. *Lewis, Martin & Co.*,
13 Gratt. 427;   *W. M. & M. Co.* v. *P. C. C. Co.*, 8 W. Va.
409.    Of course if the trustee has notice of  the equitable  ·
rights of others which were binding upon the corporation he
can by the assignment acquire no greater rights than those
possessed by his assignor.   But independent of the character
of trustees or *quasi* trustees, which the officers or agents of
an  insolvent corporation occupy  towards  the creditors,  a
court of equity will not tolerate  a  manifest violation of the
rules of natural justice by one  creditor upon all the others
who stand upon the same ground occupied by himself as to
the common fund.    It has been decided accordingly, that
a stockholder can not, when sued for his stock-subscription,
set off a debt due him by the  corporation ; and that he can
obtain payment of his claim only, in common with all other

creditors, after contributing the amount of his stock-liability in full. In *Sawyer* v. *Hoag*, Mr. Justice Miller said: "The debts must be mutual; must be in the same right. The case before us is not of that character. The debt which the appellant owed for his stock was a trust-fund devoted to the payment of all the creditors of the company. As soon as the company became insolvent, and this fact became known to the appellant, the right of set-off for an ordinary debt to its full amount ceased. It became a fund belonging equally in equity, to all the creditors, and could not be appropriated by the debtor to the exclusive payment of his own claim." 17 Wall. 622. It is not overlooked that this case arose under and was decided with reference to the U. S. Bankrupt Act of 1867; but the remarks quoted are made in reference to the general equity rule without regard to the bankrupt statue; for, in another portion of the same opinion it is said: "Though it be a doctrine of modern date, we think it now well established that the capital-stock of a corporation, especially its unpaid subscriptions, is a trust-fund for the benefit of the general creditors of the corporation. And when we consider the rapid development of corporations as instrumentalities of the commercial and business world in the last few years, with corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such principle that it is modern, for the occasion for it could not sooner have arisen." *Sawyer* v. *Hoag*, 17 Wall. 620. The same doctrine is approved and applied in the following cases: *Lawrence* v. *Nelson*, 21 N. Y. 158; *Hillier* v. *Allegheny Ins. Co.*, 3 Pa. St. 470; *Barnett's Case*, L. R. 19 Eq. 449. If these cases correctly state the law, and the doctrine is established by them, as it seems to be, that, because the capital-stock of an insolvent corporation is a trust-fund for the creditors, a stockholder is not permitted to sett-off a debt due to him from such corporation against a premium-note or claim for unpaid-stock due to it from him, it appears to me that the same doctrine would deny to a stockholder the right to set-off his debt against any claim which the corporation might hold against him after it had become insolvent and ceased to exercise its corporate franchises, whether such claim be for unpaid-stock or an ordi-

nary debt.  If the doctrine does not go to this extent, then it is of little value; for, it can easily be evaded by the stockholder paying over the full amount of his capital-stock and subsequently borrowing money or otherwise becoming indebted to the corporation for an amount equal to the stock so paid over.  By thus becoming indebted he has withdrawn a part of the capital of the corporation or other assets which except for such indebtedness would have remained as a part of the trust-fund to pay creditors.  I can not see why the capital-stock is any more a trust-fund than any other assets of the corporation.  Immediately upon the payment of the subscribed stock the fund produced thereby became undistinguishable from any other funds owned by the corporation.  The rule does not limit the trust-fund to the capital-stock only, but includes all the assets of every kind owned by the corporation at the time it is admittedly insolvent.  While I think the doctrine logically applied would reach to this extent, it must be conceded, however, that the decided cases have not gone beyond applying it to indebtedness by a stockholder for unpaid-stock.

In the case before us, under the most restricted rule, Pannell, the appellant's intestate, was not entitled to off-set his deposit against the claim of the plaintiff, except tot he extent he may be entitled a dividend as other depositors from the common-fund.  According to the proofs a plain *prima facie* case is made, showing that Pannell was not, as between the makers themselves, a principal debtor upon either the $4,000.00 or the $3,000.00 note, but that he was only the surety upon them for Wilson and Dunlevy who received the whole consideration.  This was clearly the relation of the parties when the money was first obtained from the bank, and there is not a circumstance or particle of evidence to show that there was any subsequent alteration in their relations.  If therefore, it be admitted that he as principal debtor would have a right to the set-off, it does not at all follow that he as surety would be so entitled.  The right to set-off his own debt is a very different matter from the right to set-off the debt of Wilson and Dunlevy or either of them.  Wilson and Dunlevy were primarily bound, as between the makers, to pay these notes, and if Pannell as surety paid them, whether

voluntarily or by compulsion, he would be entitled to repayment from Wilson and Dunlevy, his principals, for the whole sum so paid.    It follows, therefore, that, if his attempted payment to the bank by which he obtained said notes is sustained, he by that transaction substituted the responsibility of Wilson and Dunlevy for that of the bank for his debt, he made them his debtors instead of the bank, which was in effect giving him a preference over other depositors by substituting a solvent for an insolvent debtor.    This we have just decided in the case of *Lamb, trustee* v. *Cecil, supra*, could not, under the circumstances appearing in this cause, be done.    If it had appeared that both Wilson and Dunlevy were insolvent and that the said notes were never in fact paid by them to Pannell, the conclusion might, perhaps, be different, but there is neither proof or claim by the appellant that such were the facts.    I am therefore of opinion that the circuit court did not err in refusing to permit the appellant to have the alleged set off against the claim of the plaintiff.

But in this cause, as in that of *Lamb, trustee* v. *Cecil, supra*, the circuit court did err in its decree of February 27, 1886, from which this appeal is taken, so far as it credited the dividends, to which the appellant was entitled on the indebtedness of the bank to his intestate, as partial *payments* on the amount of the plaintiff's demand.    These dividends were in the nature of offsets and should have been so allowed.    The reasons for this conclusion are given in *Lamb, trustee* v. *Cecil, supra*.    The said decree must therefore be reversed with costs to the appellant and such decree now entered by this Court as should have been then entered by the circuit court.

Reversed.