WILLIAM T. COBB AND JOSEPH E. MOORE, Receivers,

*vs.*

CAMDEN SAVINGS BANK.

Knox.    Opinion November 29, 1909.

*Insolvent Corporation.    Receiver.    Attachment.    Judgment.    Levy and Sale.*
*Property in Custodia Legis.    Revised Statutes, chapter 47,*
*sections 77, 78, 79, 80, 81; chapter 79, section 49.*

A bill in equity was filed against a corporation under the provisions of the
Revised Statutes, chapter 47, sections 80 and 81, which provides expressly
or by reference to other sections that when the stockholders of a corpora-
tion vote to dissolve it, a bill therefor may be filed against it by any officer,
stockholder or creditor; that upon proceedings had according to the usual
course in equity the corporation shall be dissolved and terminated; that
the court may appoint receivers, issue injunctions, and pass interlocutory
decrees and orders; that the court shall, upon dissolving the corporation,
appoint one or more trustees; that notwithstanding the appointment of
trustees, the court may superintend the collection and distribution of the
assets, and may retain the bill for that purpose; and that the debts of the
corporation shall be paid in full when the funds are sufficient; and when
not, ratably to those creditors who prove their debts.   Notice was ordered
by the court returnable on a day certain and served, as ordered, and after
the return day a decree was made dissolving the corporation and appoint-
ing the plaintiffs as trustees and receivers.   In the meantime, after the
service of notice in the bill, but before the return day, and before the
appointment of the receivers, real estate of the corporation was seized on
execution by a judgment creditor having an existing valid attachment,
which antedated the bill in equity, and after regular proceedings had, was
sold on execution sale to the defendant.   In an action by the receivers to
recover possession of the real estate so sold, *Held:*

1.   The prior attachment was not dissolved by the filing of the bill in equity
and the proceedings thereunder.

2.   In proceedings under the statute for the sequestration and winding up
of corporate estates and the distribution of their proceeds, the property
is in custodia legis, for the purpose of being administered according to the
statute, at least, from the time of the service of process, if not from the
filing of the bill.

3. The title to the demanded premises, by relation back, vested in the receivers, in legal effect, prior to the seizure on the execution.

4. Property in custodia legis cannot be levied upon and sold, without leave of court first obtained. If so sold, the sale is void.

5. The denial of a motion for an order to restrain the execution sale is not a granting of leave to sell.

6. While attachment liens are not destroyed by proceedings under the ·statute, R. S., chapter 47, sections 80 and 81, the right to enforce them in the usual way is suspended, and lien creditors must apply to the court in the sequestration proceedings to have their priority of right determined and enforced, either out of the property itself, or out of the proceeds thereof, as may, be adjudged.

On report. Judgment for plaintiffs.

Writ of entry by the plaintiffs as receivers and trustees of the Mt. Battie Mfg. Co,, for the purpose of determining the title to certain real estate in Camden, formerly the property of said company. The plaintiffs claimed the same as receivers and trustees duly appointed, while the defendant claimed under an execution sale of the same as the property of said company.

Plea, the general issue. When the action came on for trial, an agreed statement of facts was filed and the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Arthur S. Littlefield*, for plaintiff.

*Reuel Robinson*, for defendant.

SITTING: WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

SAVAGE, J. Real action. The plaintiffs are the receivers. and trustees appointed under the provisions of sections 80 and 81 of chapter 47 of the Revised Statutes, of the Mount Battie Manufacturing Company, which prior to the proceedings hereinafter mentioned was the owner of the demanded premises. The defendant is the purchaser of the same under an execution sale, the validity of which is presented for the determination of the court.

On December 26, 1905, Brown & Adams, of Boston, creditors of the corporation, brought suit against it, and on the same day caused its real estate to be attached on their writ. Questions of

law having arisen, they were argued in the Law Court, and the case was continued on the docket until November 28, 1908, when a certificate of decision was received from the Law Court. Thereupon, as provided in R. S., chap. 79, sect. 49, judgment for the plaintiffs was entered as of the preceding September term of the court. Execution issued December 3, 1908. On this execution the officer returned that he took the lands in question in execution on the same day. After due notice, they were sold on the execution, January 4, 1909, to the defendant, and a sheriff's deed thereof was given.

In the meantime, in accordance with a vote of the stockholders of the Mount Battie Manufacturing Company, a bill in equity was filed, prior to November 16, 1908, by its treasurer, under the provisions of R. S., ch. 47, sects. 80 and 81, praying for a dissolution of the corporation, and the appointment of trustees. Notice was ordered returnable January 5, 1909, and was served on the corporation November 16, 1908. Public notice was likewise ordered and given. Notice of the pendency of the bill was also ordered and given to all known creditors of the corporation by mail, postage prepaid. Such notice was mailed to Brown & Adams and the Camden Savings Bank, December 2, 1908, the day before the execution in question issued. On January 11, 1909, a decree was entered, by which the corporation was dissolved, and the plaintiffs appointed trustees and receivers. On the same day a deed of the premises to the plaintiffs was executed and delivered in the name of the corporation, by its treasurer.

It also appears that prior to the Brown & Adams attachment, the lands had been attached in the suit of S. Rawitzer & Co. against the corporation. That suit was continued on the docket until January 6, 1909, when a special judgment for the plaintiff was rendered, and execution issued January 11, 1909. And it appears that a portion of the surplus of proceeds of the sale on the Brown & Adams execution has been applied by the officer to the Rawitzer execution.

It is contended by the plaintiffs that inasmuch as the corporation was dissolved, the sale was void because of the non-existence of a corporation defendant, that the statute, under which the bill in

equity was brought, R. S., ch. 47, sects. 77-81, contemplates and provides for a ratable distribution of assets among all the creditors, and that because of the dissolution of the corporation, all attachment liens were dissolved. We do not adopt this view. In the first place, the levy and sale in this case took place before the dissolution of the corporation. But further than that we do not think that a proper interpretation of the statute warrants the view that existing liens by attachment are dissolved by statutory proceedings ending in a dissolution of the corporation, although the method of enforcement may be affected, as will be noticed later. The statute, R. S., ch. 47, sect. 77, provides that when the charter of a corporation expires or is terminated otherwise it shall have a corporate existence for three years for winding up its affairs. Section 78 provides that in such case a creditor or stockholder may apply to the court which may appoint one or more trustees to take charge of its estate and effects with power to collect its debts, and defend suits at law, and to sell and convey its real estate. The court has jurisdiction in equity of all proceedings therein. Section 79 provides that the debts shall be paid in full when the funds are sufficient; and when not, ratably to those creditors who prove their debts. By section 80, stockholders may vote to dissolve a corporation, and when they do so, a bill in equity may be filed against it for dissolution by any officer, stockholder or creditor. Such notice thereon as is ordered by the court must be given, and then such proceedings may be had according to the usual course in suits in equity, that the corporation shall be dissolved and terminated. Section 81 reads as follows : — "Said court has jurisdiction in said cause to appoint receivers, issue injunctions, and pass interlocutory decrees and orders, according to the usual course of proceedings in equity ; and shall, moreover, upon dissolving said corporation, or upon terminating its charter, appoint one or more trustees, who shall have all the powers conferred upon similar trustees by sections seventy seven, seventy eight, seventy nine and eighty nine, or by any other law of the State, with such special powers as may be given them by the court. But notwithstanding the appointment of such trustees, said court may superintend the collection and distribution of the·

assets of said corporation, and may retain said bill for that purpose."

It has already been seen that the bill in the present case was brought under the provisions of section eighty. But the purpose and effect of the statute must be sought by examining all of the sections which relate to the same subject matter, and which are interwoven by reference. The statute, we think, contemplates that in winding up a corporation under its provisions, the existing rights of priority of all creditors are to be preserved. To be sure, creditors who have proved their claims are to be paid ratably out of the funds, but the funds out of which they are to be paid are those remaining after payment of secured claims, claims having priority by reason of mortgage, attachments or otherwise. So we conclude that the bill in equity and the proceedings under it did not ipso facto work a dissolution of the Brown & Adams attachment.

The next question is whether, after a bill in equity for dissolution is filed under this statute, and notice is ordered and served, but before the appointment of receivers or trustees, a creditor with notice, having a pre-existing valid attachment, may lawfully levy his execution upon the real estate of the corporation and sell it, or whether such a sale will be illegal and void.

The plaintiffs contend that the property was in custodia legis, both at the time of the seizure by the sheriff and at the time of the sale, although they were not appointed receivers until after the sale. In the very recent case of *Chalmers* v. *Littlefield*, 103 Maine, 271, it was held, in accordance with practically universal authority, that property in custodia legis is not subject to seizure and sale on execution, and that such a sale, without leave of the court first obtained, is wholly illegal and void. In view of this rule, the question to be answered in the case is, whether this property, under the circumstances, was in custodia legis.

First, what is the custody which the law intends? The oft repeated expression is that the custody of the receiver is the custody of the court, and that is custodia legis. But when can it be said that the receiver has custody? Must he take actual, physical possession? Does his title date from the time of his appointment, or does it relate back to the beginning of the proceedings? Or to

the time when the court took cognizance of the bill by issuing process? Or to the time when the process was served? Does he take title by the decree of appointment, or is a conveyance to him necessary? All these questions are more or less involved in the present inquiry, and upon all of these there is more or less diversity, and even contrariety, of judicial expression in the reported cases. But we think a careful analysis of the cases will show that some, though not all, of this diversity is due to the varied kinds of receivership proceedings to which the rules have been applied. In attempting to answer these questions, while due regard must be paid to established rules of equity procedure in general, we must not lose sight of the purpose of the statute, which is judicial sequestration and distribution of the entire corporate estate, nor of the equitable principles applicable to such a statute.

It should be remembered that the proceedings under which these receivers are acting are statutory in their origin and character. It is not a creditor's bill. It is not a proceeding at common law. It is not a supplementary proceeding to a suit, like those in many of the cases in other jurisdictions. And, too, we may in a measure eliminate a line of cases in which receivers sought to invalidate execution sales of personal property which had been levied upon and was in the lawful possession of the sheriff prior to the appointment of receivers, for this case relates to real estate. See *Varnum* v. *Hart*, 119 N. Y. 101; *In re Hall & Stilson Co.*, 73 Fed. R. 527; Alderson on Receivers, 229.

In former days, in common law proceedings, it was generally held that the appointment of a receiver did not operate to convey to him the title to real estate, but in modern times, the doctrine has grown up, and appears to be well established, that at least in statutory proceedings for the dissolution of corporations, the decree of appointment, ipso facto, vests the title to the real estate in the receiver. *Attorney General* v. *Atlantic Mut. L. Ins. Co.*, 100 N. Y. 279. See also *Tillinghast* v. *Champlin*, 4 R. I. 173. The statute in this case makes no mention of a deed, but gives the trustee an absolute power to sell the real estate. And having the title, we think he should be deemed to have possession, as against

those merely having liens, but who are not in possession, even though a technical "seizure" on execution has been made, for that is not possession, so as to prevent a receiver from taking possession. *Wiswall* v. *Sampson,* 14 How. (U. S.) 52; *Oldham* v. *Scrivener,* 3 B. Mon. (Ky.) 579; *Ensworth* v. *King,* 50 Mo. 482; *In re Hall & Stilson Co.,* 73 Fed. R. 527; Alderson on Receivers, 200. It is sufficient if the receiver's possession be either actual or constructive. *Pelletier* v. *Greenville Lumber Co.,* 68 Am. St. Rep., 837.

The next question is, from what time does the receiver's title to real estate, and consequent possession, date? There are many cases which hold that he takes title from the time of his appointment. Most of these are cases at common law, in creditors' bills, or supplementary or other proceedings in which one creditor seeks to enforce a specific claim upon the debtor's estate. 4 Pomeroy's Eq. Jurisprudence, sects. 1333, 1334. If successful, this necessarily works a preference. And in a race between creditors, equity does not take sides. Until the court appoints a receiver, the first one who comes is served. And in some cases, this rule has been applied in statutory proceedings. But a later, and we think a better, rule is, that in statutory proceedings for the sequestration and winding up of corporate estates and the distribution of their proceeds, the title of the receiver relates back, either to the filing of the bill, or the issuing of process by the court, or to the service of process, (and it is immaterial which, in this case) and that from that time on the property is considered to have been in the custody and protection of the court for the purpose of being administered according to the statute. *Fogg* v. *Order of the Golden Lion,* 159 Mass. 9; *Jones* v. *Arena Publishing Co.,* 171 Mass. 22; *Stevens* v. *Shenango Glass Co.,* 166 Mass. 238; *Merrill* v. *Commonwealth Fire Ins. Co.,* 171 Mass. 81; *Illinois Steel Co.* v. *Putnam,* 68 Fed. R. 515; *Hutchinson* v. *American Palace Car Co.,* 104 Fed. R. 182; *Farmer's Loan & Trust Co.* v. *Lake St. Elevated R. R. Co.,* 177 U. S. 51; *Wiswall* v. *Sampson,* 14 How. 52; *Doane* v. *Milville Mut. Ins. Co.,* 43 N. J. Eq. 522; *Miller* v. *Sherry,* 2 Wall. 249; *Reisner* v. *Gulf, Colorado & Santa Fe Railway Co.,* 89 Tex.

656; 59 Am. St. Rep. 84; Alderson on Receivers, 219. ·And the property is sequestrated as of that time. And the reason for this rule is obvious. If it were otherwise the entire purpose of the statute might be frustrated. That purpose is a ratable distribution of the corporate funds, after payment of priorities, among the creditors. If after the bill is filed and before the receiver is appointed, the property is not within the protection of the court, creditors may create new liens by attachment, may levy executions, and thus may entirely dissipate the fund, before the arm of the court can reach it. Since the beginning of proceedings is likely to awaken creditors to the enforcement of their claims, if they could attach or levy meanwhile, the statute might in many instances prove self-destructive. It is declared in *Pelletier* v. *Greenville Lumber Co.*, supra, that the practical effect of such a rule "would be either to permit outside parties to stop all further proceedings of a court of equity by disposing of the subject matter in controversy, or else to put that court in the position of holding simply the naked possession of property, and gravely proceeding to determine who would have been entitled to the property if the property had not been sold." We are led therefore, by reason as well as by authority, to hold that by relation back, the title to the demanded premises, in the eye of the law, vested in the receivers, prior to the issuing of the Brown & Adams execution. After that time the property was in custodia legis. It could not be attached, it could not be levied upon and sold, without leave of court first obtained. If sold, the sale would be void.

It must be conceded that this is not the universal rule. In some cases the distinction which we have pointed out has been disregarded, and the rule in common law cases followed. In others, a different rule has been applied, growing out of statutory provisions. As, for instance, in *Squires* v. *Princeton Lighting Co.*, 72 N. J. Eq. 883, 15 L. R. A. (N. S.) 657, the New Jersey Court held, under the statute of that State, that the property was in custodia legis from and after an adjudication of insolvency but not before. ·Our statute contains no such provision.

But the statutory proceedings did not destroy the statutory lien by previous attachment. It merely suspended the enforcement of

it in the usual way. The receiver took only such estate as the corporation had,— and subject to all liens. *Kittredge* v. *Osgood*, 161 Mass. 384; *Gorham* v. *Mutual Aid Society*, 161 Mass. 357; *Dann Mfg. Co.* v. *Parkhurst*, 125 Ind. 317; *Hoffman* v. *Schoyer*, 143 Ill. 598; *Kneeland* v. *American Loan Co.*, 136 U. S. 89. But while the property is in the custody of the law, the right to enforce liens, without leave of court, is suspended. Lien creditors must apply to the court, which is bound to give effect to liens which existed when the property passed into the custody. of the law. *Duryee* v. *U. S. Credit System Co.*, 55 N. J. Eq. 311; *Oakes* v. *Myers*, 68 Fed. R. 807; Alderson on Receivers, 198.

The equitable proceedings in this case placed the property in the possession of the court to be administered in a way so as to protect the priority of the attachment lien, and not to destroy it. Brown & Adams had no vested right to enforce their attachment in a particular manner, for their attachment was made subject to all of the laws of the State, including the statute in question.

And there were various ways in which their priority could be preserved. By leave of court they could sell on execution in the statutory way. *Walling* v. *Miller*, 108 N. Y. 173; *Wiswall* v. *Sampson*, 14 How. 52. This leave is discretionary. Alderson on Receivers, 229. Or, the court could order a sale subject to their lien, and leave them to enforce it. *Wheeler* v. *Walton & Whann Co.*, 65 Fed. R. 720; Alderson on Receivers, 228. Or, they could intervene in the proceedings, and the court in making distribution of the fund could declare and enforce their priority, by causing the fruit of their lien to be paid to them. *Wiswall* v. *Sampson*, supra; *Walling* v. *Miller*, supra; *Cass* v. *Sutherland*, 98 Wis. 551; *Albany City Bank* v. *Schermerhorn*, 10 Paige, N. Y. 263. At any rate, it was for the court, having possession of the estate, to adjudicate upon the validity of their lien, and its amount, and its stage of priority.

It has been said that the filing of the bill in such a case creates an equitable levy upon the property. *Storm* v. *Waddell*, 2 Sand., ch. 494; *Miller* v. *Sherry*, 2 Wall. 249; *Illinois Steel Co.* v. *Putnam*, supra. The estate is to be administered upon equitable

principles. Since the property is deemed to be in custodia legis from the commencement of the proceedings, and since from that time the lienors are powerless, of their own motion, to protect themselves, it would seem to be equitable that distribution should be made in such cases according to the status of the liens at the time the bill was filed, without regard to what is or is not done afterward, that is to say, that the lien should not be lost thereafter by failure to pursue statutory, but futile, methods of enforcement, but that equity should impress the lien upon the fund. It has been held that after the appointment of a receiver, it is unnecessary for the sheriff to maintain keepers over the property in order to continue the lien. Alderson on Receivers, 222. But it is not necessary to decide this question now, nor whether nor when a lienor by his conduct may become equitably estopped from claiming a priority of payment. We merely decide now that if the execution sale upon which the defendant's title is based was without leave of court, it was void, and the defendant has no title.

It is claimed by the defendant that leave was granted, inferentially, at least. It appears that prior to the sale, the plaintiff in the bill in equity prayed the court for a restraining order to prevent the sale until further order of court. Upon this petition, the court made a decree as follows: "Motion for restraining order denied." By this decree, it is claimed that the court virtually gave leave for the sale. We do not think this conclusion necessarily follows. The granting of a restraining order was discretionary. The order may have been refused upon any one of several grounds which fall short of giving even an implied leave to sell. It does not appear that the attaching creditors were parties to the bill before the court; nor that the sheriff was a party. The sitting Justice may have considered that the right of the plaintiffs was not so clear as to warrant a restraining order, or that irreparable injury would not follow, or that the remedy at law was adequate. None of these propositions would go to the merits. They would leave the attaching creditors to proceed at their own risk. As they now claim that leave of court was given, the burden is on them to show it affirmatively. This they have not done.

Whether the execution sale was void by reason of prior attachments, as is claimed, we have no occasion to consider.

*Judgment for the plaintiffs.*