## WIGGINGTON et al. v. AUBURN WAGON CO. et al.

Circuit Court of Appeals, Fourth Circuit.
July 1, 1929.

No. 2793.

Clarence E. Martin, of Martinsburg, W. Va. (J. O. Henson, Martin & Seibert and C. M. Seibert, all of Martinsburg, W. Va., on the brief), for appellants.

Harry H. Byrer and W. C. Kilmer, both of Martinsburg, W. Va. (Kilmer & Byrer, of Martinsburg, W. Va., on the brief), for appellees.

Before PARKER, Circuit Judge, and McDOWELL and MEEKINS, District Judges.

PARKER, Circuit Judge. On November 15, 1923, the Auburn Wagon Company, of Martinsburg, W. Va., executed to W. C. Kilmer, trustee, a deed of trust conveying its real estate, machinery, and equipment to secure a bond issue of $75,000. This suit was instituted on September 8, 1925, by one L. R. Myers, the president of the company, who claimed to be the owner and holder of $22,500 of the bonds thereby secured, asking that the deed of trust be foreclosed, and that a receiver be appointed to take charge of the property of the corporation, not on the ground of insolvency, but of temporary embarrassment. The suit not being resisted, receivers were duly appointed, with authority to carry on the business of the corporation pending the sale of its property, and for that purpose to issue receivers' certificates, constituting a first lien upon its assets. Subsequently a special master was appointed to audit its affairs and report upon the extent and nature of its assets and liabilities. Hopeless insolvency was disclosed by this, and thereupon the business of the corporation was closed out, and its real and personal property sold under order of court. The receivers' certificates were retired, and a final order was entered establishing the debts which were owing, making allowances for the costs and expenses of the receivership, and directing the distribution of the proceeds of the property sold. $20,505.94 of the funds derived from the property embraced in the deed of trust was ordered distributed among the bondholders, and $5,374.22, from other property, among the general creditors.

After the receivers and the special master had been appointed, certain bondholders and judgment creditors applied for and obtained leave to intervene and file answers. The answer of the bondholders challenged the ownership of bonds by Myers and his right

to maintain the foreclosure suit, and also the power of the court to operate the business of the corporation under a receivership. It set up, however, by way of cross-bill, that there had been default in the payment of interest due on the bonds held by the interveners, and asked that the court discharge the receivers who had been appointed upon the application of Myers, but appoint others to take charge of the property and apply it to the claims of creditors. On motion of Myers, this answer was stricken out, except in so far as it set up the ownership of bonds in the interveners, and an amended answer, which elaborated the denial of the ownership of bonds by Myers, was also stricken out, and the intervening bondholders excepted. The creditors likewise filed an answer and amended answer, which were stricken out, except in so far as they asserted claims. In these answers the creditors also challenged the ownership of bonds by Myers and the power of the court to appoint receivers to carry on the business of the corporation. They alleged, however, that they had obtained judgments against the corporation since the appointment of the receivers, and had caused executions to be issued thereon, and had thereby obtained liens upon its assets, and they prayed that these liens might be protected by the court.

A hearing was duly had before the special master for the establishment of claims. At this hearing one Bradford, the treasurer of the corporation, testified that $22,500 of bonds were sold to and held by Myers. Counsel for the intervening bondholders and creditors asked him on cross-examination how these bonds had been paid for. Counsel for Myers objected, and, upon the objection being overruled, directed the witness not to answer the question, and he did not answer it. Counsel stated that he so directed the witness because the court had not passed upon the motion to strike out the answers in which Myers' ownership of the bonds was challenged, and that the question ought not be allowed until this motion should be passed upon, and it should appear what issues were left in the case. The answers were subsequently stricken, and the master filed his report without requiring the witness to answer the question, or citing him for contempt for failing to do so, and exception was taken to the report on that ground.

Among the allegations of the answer of the intervening bondholders, which was stricken out, was one challenging the ownership of bonds by Myers as follows:

"Respondents now say that the said bonds of the said Myers were not sold to him, so your respondents are informed and believe, but that they were either given to him, without consideration, or as a part of a scheme adopted by the plaintiff and the defendant corporation at or about the time that the bonds were authorized to be issued, and were in fact sold to your respondents; that respondents do not know the exact particulars of this transaction, but respondents say that they are advised that it happened in one of the following ways, so they are now advised and aver: That at the time that this bond issue was authorized, the plaintiff, Lee Roy Myers, was the owner of a great majority, if not all, of the capital stock of the Auburn Wagon Company, the defendant; that the company was unable to meet its obligations and the additional capital was apparently necessary; that, at that time the said company, so your respondents now learn, was insolvent; that a man by the name of Wood or Woods, otherwise to your respondents unknown, together with the plaintiff herein, agreed to incorporate and did incorporate a company under the laws of the state of Delaware, known as the National Commercial Body Corporation, the said Woods and Myers agreeing to direct the policy of the said company; that to this new company the said Myers was to and did assign his stock, then without value, in the Auburn Wagon Company, and there was then issued to him, in lieu of the stock, the amount of bonds referred to above; that the bonds held by your respondents are all unconditionally guaranteed as to payment in full at maturity, in event of default by the National Commercial Body Corporation; that the National Commercial Body Corporation, so the complainant, by and through his duly authorized agent represented to your respondents, was to have assigned to it, assets over and above liabilities, of the value of three hundred fifty-four thousand six hundred and fifty-eight dollars and ninety cents ($354,658.90); that the said Myers took the bonds, but respondents are not advised, but believe that the stock of the Auburn Wagon Company was duly assigned to the National Commercial Body Corporation, but no other assets, so far as your respondents have been able to ascertain, are held by it. Respondents say that, if there was a consideration by reason of this act, then the said transaction not having been completed, the consideration, if any, failed, and the plaintiff herein should be required to deliver to the Auburn Wagon Company, for cancellation, the bonds illegally in his possession."

Many technical points were raised in the court below and were discussed in the briefs of counsel here, but only four questions of any practical importance are raised by the assignments of error, viz.: (1) Did the answers of the intervening bondholders and creditors raise any question as to the right to appoint receivers for the corporation which the District Judge should have passed upon? (2) Were the intervening creditors entitled to a lien upon any of the property in the hands of the receivers because of the judgments and executions obtained after the appointment of receivers? (3) Were the intervening bondholders and creditors entitled to have the ownership of bonds by Myers inquired into? And (4) were the attorneys' fees and the allowance to the receivers excessive or improper?

On the first of these questions, we think there can be no doubt upon the record before us that the appointment of the receivers to take over the affairs of the corporation was within the power of the court and that the answers which were stricken raised no question which the court should have considered with regard thereto. Assuming that the appointment of the receivers might have been resisted successfully by the corporation itself, as complainant had not reduced his claim to judgment and did not allege insolvency, these matters were waived when it failed to object to the receivership. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 380, 14 S. Ct. 127, 37 L. Ed. 1113; Price v. U. S., 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373. As said by Mr. Justice Brewer in the Hollins Case: "If there was a defense existing to the bills as framed, an objection to the right of these plaintiffs to proceed on the ground that their legal remedies had not been exhausted, it was a defense and objection which must be made in limine, and does not of itself oust the court of jurisdiction."

Although there was no allegation in the bill of the insolvency of the corporation, there was allegation of large indebtedness and embarrassment resulting therefrom, and, upon investigation of its affairs it was found to be hopelessly insolvent. Where such a situation exists there can be no doubt of the power of the court to proceed with the winding up of the corporation's affairs, just as though the receiver had been appointed on the ground of insolvency in the first instance. Price v. U. S., supra; Davis v. Pullen (C. C. A. 1st) 277 F. 650. The interveners recognize in their answer that the corporation is insolvent, and the intervening bondholders do not ask that the suit be dismissed, but that

relief be granted upon their answer as a cross-bill, and that other receivers be appointed to wind up its affairs. This, however, is not to be considered for a moment. The court having properly obtained possession of the property of the corporation will, of course, hold it under the existing receivership and will administer it in accordance with the rights of the parties. The bondholders and creditors had the right to intervene and assert their rights as against the corporation and its property, but they were required to do so "in subordination to, and in recognition of, the propriety of the main proceeding." Equity Rule 37 (see 28 USCA § 723).

Coming to the second question, it is perfectly clear that the intervening judgment creditors obtained no liens upon the property of the corporation by the obtaining of judgments and the issuance of executions after the property had been taken into possession by the court through the receivers. Harkin v. Brundage, 276 U. S. 36, 43, 48 S. Ct. 268, 72 L. Ed. 457; Lion Bonding Co. v. Karatz, 262 U. S. 77, 88, 43 S. Ct. 480, 67 L. Ed. 871; Wabash R. R. v. Adelbert College, 208 U. S. 38, 54, 28 S. Ct. 182, 52 L. Ed. 379; Farmers' Loan & Trust Co. v. Lake St. El. R. Co., 177 U. S. 51, 61, 20 S. Ct. 564, 44 L. Ed. 667; Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322; Rice v. Durham Water Co. (C. C.) 91 F. 433; Cobb v. Camden Savings Bank, 106 Me. 178, 76 A. 667, 20 Ann. Cas. 547. And see the very recent case of Riehle v. Margolies, 49 S. Ct. 310, 313, 73 L. Ed. ——. The rule applicable is clearly stated by Mr. Justice Brandeis in the Lion Bonding Co. Case, as follows:

"Where a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. Wabash R. R. Co. v. Adelbert College, 208 U. S. 38, 54 [28 S. Ct. 182, 52 L. Ed. 379]. Compare Oklahoma v. Texas, 258 U. S. 574, 581 [42 S. Ct. 406, 66 L. Ed. 771]. Possession of the res disables other courts of co-ordinate jurisdiction from exercising any power over it. Farmers' Loan & Trust Co. v. Lake Street Elevated R. R. Co., 177 U. S. 51, 61 [20 S. Ct. 564, 44 L. Ed. 667]. The court which first acquired jurisdiction through possession of the property is vested, while it holds possession, with the power to hear and determine all controversies relating thereto. It has the right, while continuing to exercise its prior jurisdiction, to determine for itself how far it will permit any other court to interfere with such possession and juris-

diction. Palmer v. Texas, 212 U. S. 118, 126, 129 [29 S. Ct. 230, 53 L. Ed. 435]."

On the third question, we think that under the allegations of the answers filed the interveners were entitled to have the ownership of bonds by Myers inquired into by the special master, who was appointed to ascertain among other things the amount of the debts owing by the insolvent corporation. When the bona fides of an asserted debt was challenged by bondholders and creditors, evidence should have been taken for the purpose of ascertaining whether it should be rejected or accepted as a valid claim against the estate; for the rule is that, where a court has appointed receivers and taken possession of the property of an insolvent for administration, creditors have the right to intervene and contest the validity as well as the priority of other claims or asserted liens. 23 R. C. L. 103; Farmers' Loan & T. Co. v. San Diego Street Car Co. (C. C.) 45 F. 518, 520; Franklin Nat. Bank v. Whitehead, 149 Ind. 560, 49 N. E. 592, 39 L. R. A. 725, 733, 63 Am. St. Rep. 302.

And we think there can be no question that the amended answer of the intervening bondholders was a sufficient challenge of the bonds held by Myers to properly raise the question of their validity before the court. It is alleged that Myers was the president of the corporation, and the owner of a majority of its stock, and that while it was insolvent and its stock worthless, he transferred $22,500 of its mortgage bonds to himself, either for no consideration whatever, or for no consideration, except his procuring an insolvent corporation to guarantee the bond issue by transferring to it his worthless stock, which thereupon constituted its sole assets. As president and director of the corporation he was charged with knowledge of its financial condition. 14a Corpus Juris, p. 100; 8 Fletcher, Cyclopedia of Corporations, 8765. And this being true, the allegations of the answer amount to a charge of fraud committed upon the corporation and its creditors including the persons who purchased the remainder of the bond issue.

It is well settled that the officers and directors of an insolvent corporation hold its assets as a trust fund for the benefit of its creditors, and that they will not be allowed to take advantage of their position, and the superior opportunity of information which it affords, to secure an advantage for themselves over other creditors. Richardson v. Green, 133 U. S. 30, 10 S. Ct. 280, 33 L. Ed. 516; Koehler v. Black River Falls Iron Co., 2 Black, 715, 17 L. Ed. 339; Farmers' Loan & Trust Co. v. San Diego Street Car Co. (C.

C.) 45 F. 518, 527; Arnold v. Knapp, 75 W. Va. 804, 84 S. E. 895; Hulings v. Hulings Lumber Co., 38 W. Va. 351, 18 S. E. 620; Sweeny v. Grape Sugar Co., 30 W. Va. 443, 4 S. E. 431, 8 Am. St. Rep. 88; Lamb v. Pannell, 28 W. Va. 663; Hope v. Valley City Salt Co., 25 W. Va. 789; note 19 A. L. R. 338. A fortiori they will not be allowed to obtain the bonds of the corporation secured by a lien upon its assets in lieu of their holdings of its stock.

It would seem to need no reasoning or citation of authority to establish the proposition that it is a fraud upon the corporation for those who manage its affairs to obtain from it a lien upon its assets in exchange for their shares of its stock. It would seem equally clear that this is a fraud upon its creditors whether antecedent or subsequent; for those who extend credit to it have the right to assume that its stock has been properly paid for, and that nothing has been done to withdraw the fund thereby realized from liability for its debts, or to appropriate it to the benefit of the officers or stockholders to the exclusion of creditors. Any arrangement by which a stockholder obtains bonds from the corporation secured by a lien upon its assets in exchange for his stock, is misleading to creditors in that, without notice to them, it withdraws from the funds available for the satisfaction of their claims the amount which the stockholder has invested in the corporation and pledged to that purpose. If such a transaction could be sustained, it would be possible to thus withdraw the entire fund created by stockholders and freeze out creditors entirely; for all that would be necessary to accomplish this result would be to issue mortgage bonds in the amount of the capital stock and transfer them to the stockholders in consideration of the latter transferring their stock, as here, to a corporation which should in turn guarantee the bonds. We take it that no court of equity would hesitate to relieve creditors against the claims of such bondholders, whether their claims arose before or after the bond issue. And we see no difference between the equity in such a case and that presented here, where, if the allegation quoted be true, a stockholder who was the managing officer of the corporation received from it nearly one-third of a bond issue in consideration of transferring his worthless stock to an insolvent corporation which guaranteed the bonds. It is unthinkable that a court of equity should be without power to afford relief in such a case.

What has been said disposes of the contention that the bonds issued can be avoided under the West Virginia statute only in favor

of antecedent creditors. That statute applies to transfers and conveyances. What we are dealing with here is not the recovery of property transferred by the corporation, but the resistance of claims against the corporation based upon bonds fraudulently issued and acquired. And whether the fraudulent acquisition of the bonds be regarded as a fraud upon the other bondholders and creditors, or merely as a fraud upon the corporation itself, there can be no question as to the right of such other bondholders and creditors to contest for the corporation in the receivership proceedings the allowance of a claim based thereon; for it is elementary, as stated above, that creditors have the right to intervene in the receivership proceedings and contest the validity of asserted claims and liens. 23 R. C. L. 103; Farmers' Loan & T. Co. v. San Diego Street Car Co., supra; Howland v. Corn (C. C. A. 2d) 232 F. 35.

On the remaining question, the allowances to the receivers and attorneys was a matter resting in the sound discretion of the District Judge. Although the allowances appear rather liberal, we cannot say that there has been any abuse of discretion with regard thereto or that they have been made upon the wrong basis.

Our conclusion is that the judge below erred in striking out the answer of interveners in so far as it challenged the ownership by Myers of the bonds in question and in refusing to inquire into the right of Myers to file the bonds as a claim against the funds in court; but that the other points presented by the assignments of error are without merit. We do not pass upon the merits of the claim of Myers in any way whatever, but merely hold that it was the duty of the court below to pass upon the questions raised by the interveners with regard thereto.

The decree of the District Court will be reversed, therefore, only in so far as it establishes the claim of Myers arising out of the alleged ownership of the bonds, and the cause will be remanded to the end that the District Judge may hear the evidence of the parties and pass upon that claim, allowing such reformation of the pleadings as may be proper. In other respects the decree appealed from will be affirmed. The costs on appeal will be equally divided between appellants and the personal representatives of Myers, who in this court have been made parties to the suit.

Affirmed in part; reversed in part and remanded.

McDOWELL, District Judge. I concur in the conclusion reached.